# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VICKIE BIELICKI, MARTA ROMANO
and CINDY VIGIL,

       Plaintiffs,

       vs.                                                                                                                                                                    No. CIV 97-1194 JC/DJS

THE TERMINIX INTERNATIONAL
COMPANY, L.P.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant The Terminix Company, L.P.'s ("Terminix's") Post-Trial Motions, filed September 8, 1998 *(Doc. 96)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that Defendant's motions are not well taken and will be denied.

## I.    Factual Background

Plaintiffs seek compensatory and punitive damages for injuries that they claim to have suffered when Terminix employee Marquis Sanchez improperly applied the pesticide Conquer™ at the New Mexico State Prison in Santa Fe on April 17, 1997. Plaintiffs were food service employees at the prison who were cleaning up the kitchen facilities when Mr. Sanchez fogged the area with a pesticide solution. All parties agree that Mr. Sanchez applied the pesticide improperly and in violation of the label instructions because he created a mist in the rooms and people were present when the spraying

took place. Terminix admitted negligent conduct, but disputed whether the negligent spraying caused Plaintiffs any injuries.

Plaintiffs seek punitive damages from Terminix, claiming that Marquis Sanchez recklessly disregarded the known risk of harm to humans when he sprayed the pesticide solution in the presence of people. According to Plaintiffs, Dave Minder, the Terminix branch manager, authorized, participated in, and ratified Sanchez's actions. Plaintiffs' theory is that Minder was afraid that Terminix would lose its contract with the prison because of the continuing roach problem. Plaintiffs claim that Minder told Sanchez that Sanchez had to make the application at the prison that day or Terminix would lose the contract, that Minder was aware of the risk of harm if the application were made while people were present, and that Minder's only concern when Sanchez told him that spraying was halted because people were being exposed was that Sanchez get the work ticket signed by prison officials so that Terminix would be paid.

At trial, Plaintiffs presented evidence of injuries that they claim were caused by the pesticide exposure. All Plaintiffs presented evidence of both short-term injuries and long-term or permanent injuries, including asthma and related respiratory problems of Ms. Bielicki, stuttering and loss of short-term memory by Ms. Romano, and loss of taste and smell by Ms. Vigil. As evidence of causation and damages, Plaintiffs presented two witnesses at trial, Dr. Schwartz and Dr. Shrader. Dr. Schwartz is a physician specializing in emergency medicine and toxicology who testified as an expert in toxicology on the issue of causation. Dr. Shrader is one of Plaintiffs' treating physicians who testified as to causation, treatment and damages.

On the issue of punitive damages, Plaintiffs presented evidence that Sanchez continued to spray pesticide into the air for several minutes, even though people were present, until ordered to stop

by a prison officer. *See* Tr. at 167-69. Plaintiffs presented evidence that the prison was upset with Terminix's contract performance less than two weeks before the application and that Minder was concerned about losing a major contract just one month after he was assigned to manage the Rio Rancho office. Plaintiffs' evidence shows that Minder instructed Sanchez to use the actisol sprayer even though Minder was aware of the risk of a fog, Tr. at 240; that Minder met with Sanchez before the spraying and expressed concerns that Sanchez was not doing his job properly at the prison, Tr. at 237-38; and that Sanchez believed that he was following Minder's orders when he performed the application even though people were present. Plaintiffs also presented evidence that Sanchez was not properly licensed at the time of the application due to clerical errors at Terminix. *See* Tr. at 246-48. Lastly, Plaintiffs presented Sanchez's deposition testimony that he called Minder from the prison after the prison officers ordered him to stop spraying and was told by Minder not to worry, but to be sure that the work ticket was signed by prison officers so that Terminix would be paid for the application.

The jury found that Terminix's negligence was the proximate cause of injury to each plaintiff and that punitive damages should be awarded against Terminix. The jury awarded compensatory damages of $60,700 to Ms. Bielicki, $77,800 to Ms. Romano, and $31,600 to Ms. Vigil. The jury awarded punitive damages of exactly twelve times the compensatory damages to each of the three plaintiffs--or $728,400 to Ms. Bielicki, $933,600 to Ms. Romano, and $379,200 to Ms. Vigil. Judgment was entered in accordance with the jury verdict.

## II. Terminix's Post-Trial Motions

Terminix moves for judgment as a matter of law under FED. R. CIV. P. 50 or, alternatively, for a new trial under FED. R. CIV. P. 59. Terminix cites six grounds for its motion.

1. The compensatory damages awarded by the jury were excessive as a matter of law and contrary to the evidence.

2. There was insufficient evidence to support any award of punitive damages.

3. The amount of punitive damages awarded was impermissibly disproportionate to the compensatory damages.

4. The verdict resulted from passion and prejudice spawned by Plaintiffs' counsel's references to the Conquer™ pesticide as the equivalent of nerve gas or mustard gas.

5. The testimony of Dr. Schwartz should have been excluded under FED. R. EVID. 702, 703, and 403.

6. The testimony of Dr. Shrader should have been excluded under FED. R. EVID. 702, 703, and 403.

I will examine first whether the testimony of Drs. Schwartz and Shrader should have been excluded; second, the amount of compensatory damages; third, whether Defendant's conduct satisfied the conditions for imposing punitive damages; fourth, whether the punitive damages award was impermissibly disproportionate; and last, whether Plaintiffs' counsel's references to similarities between the pesticide and nerve gas spawned improper passion and prejudice that infected the verdict.

### A. Testimony of Plaintiff's Medical Experts

Dr. Schwartz offered expert opinion testimony on the question of causation, i.e., whether Plaintiffs' exposure to the pesticide caused or aggravated the injuries that Plaintiffs claimed. I qualified Dr. Schwartz as an expert in toxicology, without objection at trial, after he presented credentials that include a B.S. in chemistry, an M.D., extensive experience in emergency toxicology,

and extensive publications in the area of toxicology. Dr. Schwartz presented scientific evidence of a mechanism for causation based on the biochemical effects of pyrethroids[1] on nerve cells. *See* Tr. at 440-41. Dr. Schwartz also presented evidence of pyrethroid poisonings from the scientific literature, including accidental exposure of more than 500 people to esfenvalerate in China. *See* Tr. at 442-43. Dr. Schwartz reviewed Plaintiffs' medical records and concluded that their symptoms, within reasonable medical certainty, were caused by exposure to Conquer.™

Terminix objects to Dr. Schwartz's testimony on the grounds that Dr. Schwartz does not know the dose of Plaintiffs' exposure, that Dr. Schwartz could not point to specific medical literature supporting his opinion, and that Dr. Schwartz did not perform a differential diagnosis. In fact, Dr. Schwartz did point to reputable scientific literature supporting his opinion and he did perform a differential diagnosis by comparing the likelihood that Plaintiffs' symptoms arose from exposure to Conquer™ versus other causes, such as pre-existing conditions. Dr. Schwartz could not know the dose of Plaintiffs' exposure because Terminix itself did not know how much pesticide had been applied. Furthermore, this information would not have been useful to Dr. Schwartz because there is no dose-response data for esfenvalerate. As Dr. Schwartz testified, controlled experiments involving human volunteers would be unethical, the equivalent of Nazi wartime experiments on human guinea pigs. Therefore, only data from accidental poisonings and suicides are available. The Chinese data indicate that accidental exposure to esfenvalerate in pesticide solutions causes serious long-term injuries analogous to Plaintiffs' injuries. Plaintiffs were exposed to unknown doses of esfenvalerate for several minutes. It would be incongruous to prevent Dr. Schwartz from presenting an opinion on causation for lack of data where the lack of dosage information resulted from

---

[1] The active ingredient in Conquer™ is a synthetic pyrethroid chemical, esfenvalerate.

Terminix's own inaccurate procedures, and the lack of dose-response data is due to the extreme toxicity of the product that makes controlled experiments unethical.

Dr. Shrader is Plaintiffs' treating physician. At trial, he provided his diagnosis of Plaintiffs' injuries based on his own examination and their medical records. Dr. Shrader ruled out other causes for Plaintiffs' injuries. He also testified concerning the detoxification treatments that he provided to Plaintiffs and that these treatments improved Plaintiffs' condition. Dr. Shrader's treatments clearly are novel techniques, but there is nothing unique about Dr. Shrader's diagnostic techniques. There is no reason to exclude Dr. Shrader's testimony on diagnosis or treatment under FED. R. EVID. 702, 703, or 403. I conclude that Dr. Shrader's testimony was properly admitted.

**B.      Compensatory Damage Award**

Under New Mexico law, a compensatory damage award by the jury will not be disturbed unless it is clearly excessive. *See McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 791 P.2d 452 (1990). New Mexico allows juries to consider lost earnings, lost earning capacity, past and future medical expenses, nature, duration and extent of injuries, pain and suffering, and aggravation of preexisting conditions as elements of damages. *See* N.M. U.J.I. CIV. 13-1802 to -1808. Each plaintiff presented evidence of physical injuries that could be permanent. Ms. Bielicki presented evidence of respiratory problems, including asthma, that were caused or aggravated by exposure to Conquer.™ Ms. Romano presented evidence of stuttering, forgetfulness and confusion. Ms. Vigil presented evidence that she has lost all sense of taste and smell from the exposure. Dr. Shrader testified that future medical expenses could amount to a minimum of $10,000, and perhaps as much as $25,000 per year, for each plaintiff. Ms. Romano and Ms. Bielicki presented evidence of decreased future earning capacity.

Although the compensatory damage award was substantial, I cannot say that the award was clearly excessive or against the weight of the evidence.

        **C.**      **Propriety of Awarding Punitive Damages**

New Mexico law authorizes the award of punitive damages where a defendant's conduct is malicious, willful, reckless, wanton, grossly negligent, fraudulent or in bad faith. *See* N.M. U.J.I. CIV. 13-1827. Punitive damages may be awarded against an employer if it authorized, participated in, or ratified conduct of an employee that would give rise to punitive damages. *See id.*

Plaintiffs presented substantial evidence from which a jury could find that Marquis Sanchez was reckless or grossly negligent, if not willful, in applying Conquer™ as an air fog when people were present. Sanchez continued to spray for several minutes even though people were present and were suffering from the effects of the pesticide. There was also substantial evidence that Terminix authorized, participated in or ratified Sanchez's conduct. Plaintiffs presented evidence that David Minder, Terminix's office manager, was aware of the prison's complaints about Terminix's performance and was concerned about the possible loss of this contract. Terminix proposed to use the actisol machine to spray Conquer™ into the plumbing voids even though Minder was concerned that an airborne cloud could result. Minder met with Sanchez to express concerns that Sanchez was not getting the prison treatments done according to the agreed schedule. The evidence presented by Plaintiffs at trial indicated that Terminix employees did not know who mixed the pesticide solution, what concentration of solution was mixed, or how much was used. Sanchez's license was not transferred properly due to clerical errors at Terminix. Evidence was presented that Minder expressed little concern for the improper spraying after the treatment, but was more concerned with proof that the prison was treated that day. Terminix may dispute this evidence, but it is within the

province of the jury to give testimony whatever weight it deems appropriate after evaluating the credibility of the witnesses.

A jury could conclude from the evidence that Minder authorized Sanchez to treat the prison facility with the actisol machine on April 17 even if people were present. A jury could conclude that Terminix's sloppy procedures and cavalier attitude toward safety and licensing requirements constituted participation in the reckless conduct. A jury could conclude that Minder ratified Sanchez's misapplication based on Sanchez's deposition testimony that Minder was more concerned with obtaining proof that the prison was treated than with injured people. I conclude that the jury's decision to award punitive damages is supported by substantial evidence.

### D.      Amount of Punitive Damages

The size of a punitive damage award "is left to the discretion of the trier of fact, based on the circumstances of each case, but should not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason and justice." *Weidler v. Big J. Enters., Inc.*, 124 N.M. 591, 603, 953 P.2d 1089, 1101 (Ct. App. 1997) (quoting *Downs v. Garay*, 106 N.M. 321, 324, 742 P.2d 533, 536 (Ct. App. 1987)). New Mexico appellate courts "rarely disturb a punitive damages award." *Id.*

The Supreme Court requires that this court consider three factors when examining the amount of a punitive damage award: 1) the degree of reprehensibility of Defendant's conduct; 2) the ratio of the punitive damage award to the harm or the potential harm inflicted on Plaintiffs; and 3) the difference between the punitive damage award and civil penalties that could be imposed for comparable misconduct. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

Of these three factors, the first is the most important in determining whether the award is reasonable. *See id.*

Plaintiffs presented substantial evidence from which a jury could conclude that Terminix employees recklessly disregarded health and safety risks in order to keep its contract with the prison. Indifference to or reckless disregard for the health and safety of others is considered reprehensible conduct that supports substantial punitive damages. *See Weidler*, 124 N.M. at 604, 953 P.2d at 1102. *Cf. BMW*, 517 U.S. at 576 (no aggravating factor present where BMW's conduct did not show indifference to health and safety). A jury could find Terminix's conduct to be more reprehensible than the conduct of the defendant in *Weidler*, where the New Mexico Court of Appeals upheld an eight-to-one ratio of punitive to compensatory damages.

The second *BMW* factor is the ratio of punitive damages to the harm or potential harm inflicted on Plaintiffs. Although the Court suggested that a ten-to-one ratio may be the maximum permissible ratio for cases involving economic harm, *see BMW*, 517 U.S. at 581, larger ratios may be appropriate where there is harm to health that may be more difficult to detect. *See Continental Trend Resources, Inc.*, 101 F.3d 634, 639-40 (10th Cir. 1996); *Weidler*, 124 N.M. at 604, 953 P.2d at 1102. A higher ratio may also be appropriate where the monetary value of the injury is difficult to quantify. *See BMW*, 517 U.S. at 582. The jury verdict provided a twelve-to-one ratio of punitive to compensatory damages. Each plaintiff presented evidence of injuries that might be permanent and difficult to detect. Future medical costs could be greater than the jury's compensatory award, and it is difficult to assign a cash value to Plaintiffs' injuries. Although high, a twelve-to-one ratio is not impermissible in this case.

The third factor to be considered is a comparison between the punitive damage award and penalties that could be assessed for comparable misconduct. The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") provides civil penalties of up to $5,000 for each offense, as well as criminal penalties of up to a $25,000 fine and one year imprisonment for knowing violations of any provision of the Act. *See* 7 U.S.C. § 136*l*. The Act also provides that an employee's act "in every case" shall be deemed to be that of the employer. *Id.* § 136*l* (b) (4). Plaintiffs also present evidence of conduct that could violate New Mexico law. New Mexico provides penalties of up to $1,000 per violation plus suspension or revocation of an applicator's license. *See* N.M. STAT. ANN. § 76-4-34.

Terminix's alleged conduct could subject it to multiple fines under these acts, plus revocation of its license in New Mexico. Nonetheless, it is clear that the jury awarded punitive damages many times as great as the allowable civil penalty. This factor tends to support Defendant's claim that the award was excessive. If this were the only factor, or even the most significant factor to be considered, I would grant the motion for remittitur of punitive damages or a new trial on that issue. Because the first and most important factor weighs strongly in favor of a large punitive damage award, I conclude that the size of the punitive damage award is not excessive as a matter of law.

### E. Passion and Prejudice Spawned by Counsel's Reference to Nerve Gas

Defendant does not cite to specific instances where Plaintiffs' counsel improperly referred to Conquer™ as the equivalent of nerve gas or mustard gas, and Defendant did not object to any such references in closing arguments. Plaintiffs' expert, Dr. Schwartz, testified that esfenvalerate acted as a nerve poison, similar in function to the Sarin used in a well-known Tokyo subway poisoning. Plaintiffs' counsel used this testimony to support their theory of causation and to discredit

Defendant's contention that there could be no long-term effects from Plaintiffs' exposure to the pesticide. Therefore, I am not convinced that such references were improper. In any event, the jury's verdict was supported by substantial evidence on the question of causation, compensatory damages, and punitive damages. Although Terminix presented evidence to the contrary, the jury was free to believe the testimony offered by Plaintiffs and assign little weight to the testimony of Terminix's witnesses. I cannot conclude that the jury's verdict was the result of passion and prejudice.

**III.    Conclusion**

The testimony of Drs. Schwartz and Shrader was properly admitted under FED. R. EVID. 702, 703 and 403. The jury's verdict awarding substantial compensatory and punitive damages was supported by substantial evidence. Furthermore, I cannot conclude that the size of the punitive damage award is outside the range permitted by applying the *BMW* factors.

Wherefore,

**IT IS ORDERED** that Defendant's Post-Trial Motions, filed September 8, 1998 *(Doc. 96)* are hereby **denied**.

DATED this 3rd day of November, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:    Merit Bennett
                           Stephen E. Tinkler
                           Michele Masiowski
                           Tinkler & Bennett
                           Santa Fe, New Mexico

Counsel for Defendant:     Timothy S. Hale
                           Riley, Shane & Hale, P.A.
                           Albuquerque, New Mexico

                           Mitchell S. Pinsly
                           Margolis Edelstein
                           Philadelphia, Pennsylvania